ROBERT AND KAREN SPEAR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spear v. Commissioner
Docket No. 41929-86.
United States Tax Court
T.C. Memo 1988-90; 1988 Tax Ct. Memo LEXIS 121; 55 T.C.M. (CCH) 291; T.C.M. (RIA) 88090; March 1, 1988
*122 David Reeves, for the petitioners. Kenneth A. Burns, for the respondent. GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION GOLDBERG, Special Trial Judge: This case [1] was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1986, and Rule 180 et seq. [2]
Respondent determined a deficiency of $ 2,596 in petitioners' 1983 Federal income tax. Respondent also determined that petitioners were liable for additions to tax pursuant to section 6653(a)(1) in the amount of $ 129.80 and section 6653(a)(2) in an amount equal to 50 percent of the interest due on the $ 2,596 underpayment. *123 The issues for decision are: (1) whether petitioner Robert Spear has unreported tip income for 1983; and (2) whether petitioners are liable for the additions to tax pursuant to section 6653(a) for negligence or intentional disregard of rules and regulations. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Las Vegas, Nevada when they filed their petition with this Court. They timely filed their 1983 joint Federal income tax return. During the taxable year 1983, petitioner Robert Spear (hereinafter referred to as petitioner in the singular) was employed by the Tropicana Hotel and Casino in Las Vegas, Nevada as a craps dealer on the swing shift. Petitioner worked 1,792.5 hours at the Tropicana during 1983. [3] In addition to a regular salary, petitioner received tokes or tips from players at the casino. [4] During 1983, four to six craps tables were open for the swing shift and each table was operated by a four person crew. The tokes or tips were pooled and then divided equally among the four crew members who operated an individual craps table during that shift. *124 Petitioner contends that he kept an accurate diary of his toke income in 1983. He reported $ 8,394 of toke income on his 1983 joint income tax return, an average toke rate of $ 5.02 per hour. Respondent began a toke compliance program in Nevada during 1982. The program was designed to achieve voluntary compliance by casino dealers in the reporting of their tokes for 1982 and subsequent years. Dealers who entered the program agreed to keep a daily record of their toke income and to submit their records to the Internal Revenue Service on a monthly basis. Dealers also agreed to submit monthly reports of all toke income to their employers. Respondent agreed that in return for full compliance, dealer's income tax returns would not be subject to audits for pre-1982 tax *125 years. Petitioner did not participate in the toke compliance program. Under the toke compliance program, casino dealers throughout the state, including craps and the twenty-one dealers at the Tropicana, submitted to respondent monthly reports that reflected their daily toke income for 1983. The six swing shift craps dealers from the Tropicana who participated in the program, reported average hourly toke rates ranging from $ 7.27 per hour to $ 13.83 per hour. The average hourly toke rate for these six dealers was $ 9.56. Respondent determined that the toke income information received from these six craps dealers was insufficient to permit the calculation of an hourly toke rate that respondent believed reflected the amount of toke income received by craps dealers. Based on the toke income information received from the twenty-one dealers, respondent calculated an hourly toke rate of $ 11.30 per hour for the twenty-one dealers. By comparing this hourly toke rate to the toke income reported by petitioner in 1983, respondent determined that petitioner underreported his toke income for 1983. Respondent then reconstructed petitioner's toke income using the average toke rate computed *126 for the twenty-one dealers at the Tropicana for 1983. Respondent determined that petitioner had unreported toke income of $ 13,059 for 1983. [5]
It is well established that tokes constitute compensation for services rendered and are includable in gross income under section 61. Catalano v. Commissioner,81 T.C. 8, 13 (1983), affd. without published opinion sub nom. Knoll v. Commissioner,735 F.2d 1370 (9th Cir. 1984); Olk v. United States,536 F.2d 876 (9th Cir. 1976), cert. denied 429 U.S. 920 (1976). Taxpayers are required to maintain sufficient records to establish their correct tax liability. Sec. 6001. If a taxpayer fails to keep the required records, or the records maintained do not clearly reflect income, respondent is authorized by section 446 *127 to compute income in accordance with such method as in his opinion clearly reflects the full amount of income received. Meneguzzo v. Commissioner,43 T.C. 824, 831 (1965). Respondent has great latitude in adopting a method for reconstructing income. Giddio v. Commissioner,54 T.C. 1530, 1533 (1970). The reconstruction need only be reasonable in light of all the surrounding circumstances. Schroeder v. Commissioner,40 T.C. 30, 33 (1963). Petitioner has the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). As a preliminary matter, petitioner objected to the admission into evidence of respondent's records of tokes reported by other casino dealers. Respondent compared these records to the tokes reported by petitioner, for the purpose of showing that petitioner had underreported his toke income for 1983. Petitioner contends that these records are inadmissible because they do not fit within the "business records" exception to the hearsay rule. We disagree. Respondent's records were a compilation of data based on information supplied by dealers *128 in the toke compliance program. The data was kept in the course of an audit and examination activity which was regularly conducted by respondent. It was respondent's regular practice to compile such data and respondent's witness testified that she was the custodian of these records. Respondent's data is admissible because it satisfies the requirements of the business records exception to the hearsay rule. Fed. R. Evid. 803(6). Respondent was not required to show, as petitioner contends, that the dealers whose records respondent was presenting were unavailable to testify at the trial. Unavailability is not a prerequisite to the applicability of this exception to the hearsay rule. Petitioner contends that he kept an accurate diary of this toke income in 1983 and that respondent's reconstruction of his toke income is incorrect in two respects. First, petitioner contends that respondent's statistical sampling of dealers' toke income was inaccurate because only tax compliance program participants were represented. Second, petitioner argues that respondent should apply the $ 9.56 average hourly toke rate for swing shift craps dealers at the Tropicana *129 for 1983, instead of using the hourly toke rate for the twenty-one dealers. With regard to both of petitioner's contentions, we note that respondent's reconstruction of petitioner's toke income need only be reasonable in light of all surrounding circumstances. Catalano v. Commissioner, supra;Schroeder v. Commissioner, supra.
From the record before us, it is apparent that respondent conducted an extensive examination of toke records for craps and the twenty-one dealers at the Tropicana casino in 1983. Toke income information provided by the six craps dealers varied so widely that respondent could not calculate an hourly toke rate which he believed reflected the amount of toke income received by these dealers. Respondent's data demonstrates that the toke income reported by these six dealers is in no way indicative of the earnings of any one of the 24 craps dealers on the swing shift. In contrast, sufficient information was received from the twenty-one dealers for respondent to calculate an hourly toke rate that reflected the toke income received by the twenty-one dealers. Based on the lack of consistent information received from craps dealers, and on *130 the fact that the hourly rate reported by some craps dealers, respondent's use of the $ 11.30 twenty-one dealer rate in reconstructing petitioner's toke income is reasonable and produces a substantially correct result. Respondent's determination that petitioner is liable for the additions to tax provided by section 6653(a) is presumed correct and petitioner has the burden of proving that the determination is erroneous. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Petitioner failed to maintain accurate records of his toke income as required by section 6001 and the attendant regulations. Therefore, respondent's determination with respect to the additions to tax provided by section 6653(a) is also sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. This case was filed originally as a small tax case as provided for in section 7463 of the Internal Revenue Code of 1954↩. At trial, petitioners orally moved the Court to remove the case from the small case category. The Court, by Order dated June 26, 1987, granted petitioners' motion. 2. Hereinafter, all section references are to the Internal Revenue Code of 1954, as in effect in the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. In the notice of deficiency, respondent determined that petitioner had worked 1,898.5 hours in 1983. Petitioner's hours were subsequently adjusted downward to 1,792.5 hours after petitioner documented that he was on vacation for 106 hours, during which time he did not earn tip or toke income. ↩
4. Tokes are casino chips given by patrons to a dealer either as direct tips or as bets made for the dealer. ↩
5. Respondent's computation is as follows: 1983
Hours worked
1,898.5 Hourly toke rate
x $ 11.30 Toke income
$ 21,453.05 Tokes reported per return
(8,394.00)
Unreported toke income
$ 13,059    (rounded to nearest
dollar)
This computation does not take into account respondent's adjustment of petitioner's hours. ↩